THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM HORTON, a/k/a Melvin L. Horton, Defendant-Appellant.

Second District   No. 2—88—0672

Opinion filed January 30, 1990.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Melvin Horton, was charged in a 10-count indictment with (1) armed robbery, armed violence and aggravated battery for taking property from John Marzolo and striking Marzolo on July 16, 1987, (2) two counts of armed robbery and armed violence and one count of aggravated battery for taking property from Ted Selnes and Gerald Konopka and striking Selnes on July 19, 1987, and (3) armed robbery and armed violence for taking property from Robert Hanrahan on July 10, 1987. He was convicted in two separate stipulated bench trials of three counts of armed robbery and two counts of aggravated battery for offenses against Marzolo and Selnes and Konopka. The armed violence counts were merged with the armed robbery counts. He was acquitted of offenses against Hanrahan in a third bench trial in which the evidence was not stipulated. Defendant was sentenced to concurrent terms of 15 years' imprisonment for the armed robbery convictions and three years' imprisonment for the aggravated battery convictions.

On appeal, defendant raises the following issues: (1) whether his stipulated bench trials were tantamount to guilty pleas requiring Supreme Court Rule 402 admonishments and whether defense counsel gave ineffective assistance by conceding the sufficiency of the evidence; (2) whether the cause should be remanded for a new post-trial hearing on defendant's *pro se* challenge to his attorney's performance; (3) whether defendant's challenge to the constitutionality of his arrest, which was raised in a separate appeal, has been resolved in his favor, thus requiring the same resolution in this case. We affirm.

Defendant was represented throughout the proceedings by an assistant public defender who also represented codefendant, Charles Nunnery, who was charged with the same five counts as defendant for the acts of July 19, 1987. Counsel filed a joint pretrial motion to suppress identification evidence on behalf of defendants. In the motion, defendants sought to quash their arrests and suppress the fruits of the arrest, which included defendants' presence at lineups and sets of fingerprints used for comparison purposes. The motion was denied.

Counsel also moved to sever the multiple counts into three groups and to sever on Nunnery's behalf, seeking a separate trial from Horton because evidence of the other counts could be presented against Horton to Nunnery's prejudice. The court granted the motion to sever the multiple counts but denied the motion on Nunnery's behalf to be severed from defendant.

Defendant moved *pro se* for appointment of private counsel, alleging the assistant public defender had a conflict of interest because Nunnery was not going to fight the case (counsel had earlier stated that Nunnery agreed to proceed by stipulated bench trial) and might be a witness against defendant. Defendant also alleged counsel could not devote enough time to the case. The assistant public defender stated that the defendants had a personality conflict that could cause problems at a joint trial, but they did not have antagonistic or conflicting defenses. The trial judge denied the motion but stated he would reconsider it if a problem developed.

At the next appearance, defense counsel stated defendant waived his right to a jury trial and would proceed under a stipulated bench trial, not contesting the sufficiency of the evidence, but preserving the suppression issues. The trial court admonished defendant of his right to a jury trial and accepted defendant's waiver.

At the first bench trial, defendant and Nunnery were tried together for the incident of July 19, 1987. All the evidence except testimony from complainant Ted Selnes was accepted by stipulation. Selnes testified that when he entered a gas station to pay the attend-

ant, he offered the money to a tall black man who asked him if that was all he had and then displayed a revolver. Selnes attempted to leave when the man struck him on the head with the gun, pushed him to the back of the room, and made him get on the floor. A second, shorter black man went through Selnes' pockets and took his wallet. Selnes could not identify either assailant at a lineup. Defense counsel briefly cross-examined defendant after this testimony.

It was stipulated that if Gerald Konopka were called to testify, he would state he was the gas station attendant on July 19, 1987, when two black men, one a short male wearing glasses and the other a tall thin man not wearing glasses, walked into the station. The taller man revealed a revolver and pointed it at Konopka, demanding money. When Konopka opened the cash register, the taller man grabbed him and shoved him in the back room. Approximately $106, a gold chain, a gold watch, and a ring were taken from Konopka. Konopka identified defendant in a lineup as the taller assailant and Nunnery as the shorter one. When the trial judge inquired whether that was the extent of the stipulation, the prosecutor added that if called to testify, Konopka would identify defendant as the taller individual whom he earlier identified as the assailant.

Another stipulation covering fingerprint evidence stated that an expert determined that two prints on the gas station counter and one on the phone matched Nunnery's prints, and three latent prints on the gas can recovered at the scene matched defendant's prints.

At the conclusion of the stipulations, the court asked defendants if they had any evidence. The assistant defender stated he had consulted with his clients, and they did not wish to testify or present any evidence. The trial court told defendants they had a right to testify as well as a right to be silent. When asked if it was his decision not to testify, defendant responded affirmatively. At this point, the prosecutor made a brief closing argument. Defense counsel replied that defendants were not contesting the sufficiency of the evidence to convict. The purpose of the stipulated trial procedure was to preserve previously denied motions to quash arrest and suppress the lineup. The court found both defendants guilty of two counts of armed robbery and one count of aggravated battery.

Defendant was then tried by stipulated bench trial for the' offenses of July 16, 1987. The stipulation stated that John Marzolo would have testified that he was driving a cab in Elmhurst at 1:45 a.m. on July 16, 1987, when two black men approached the cab as it was stopped. The taller man produced a gun. He pointed it at Marzolo and opened the driver's door. The shorter man entered through the

passenger door and went through Marzolo's property. Marzolo's wallet was taken. The taller man hit Marzolo in the head several times. Marzolo identified defendant in a lineup as the taller assailant, and he would make the same identification if called to trial. There was also a stipulation that a latent fingerprint taken from the cab window matched defendant's left middle finger.

Defense counsel informed the court that he had discussed the accountability rule with defendant, and defendant acknowledged there was sufficient evidence to convict, but for purposes of later argument at sentencing, defendant did not accept the stipulation that he hit Marzolo. The State would have to prove this fact if it wanted to argue it at sentencing. The trial court again advised defendant of his right to testify and his right to remain silent, and defendant responded that he did not wish to testify. After brief argument by the State, the court found defendant guilty of armed robbery and aggravated battery. Defense counsel filed a motion for a new trial, preserving the suppression issues. Defendant also filed, *pro se*, a motion for a new trial, alleging, among other things, ineffective assistance of counsel.

Defendant first argues that his stipulated bench trial was tantamount to a guilty plea where his trial counsel conceded the sufficiency of the evidence, and, therefore, the trial court erred in failing to admonish him pursuant to Supreme Court Rule 402 (107 Ill. 2d R. 402).

For this proposition defendant relies primarily on *People v. Smith* (1974), 59 Ill. 2d 236. In *Smith*, the supreme court ruled that defendant's stipulated bench trial was tantamount to a guilty plea because it "was designed to establish guilt beyond a reasonable doubt." (*Smith*, 59 Ill. 2d at 242.) The stipulation stated that the facts presented (also by stipulation) were sufficient under the law to find the defendant guilty of the crime charged beyond a reasonable doubt. (*Smith*, 59 Ill. 2d at 239.) The court found there was no indication defendant was made aware of the stipulation's effect and ruled that where the circumstances indicate that calculated efforts have been made which amount to the entry of a guilty plea, defendant must be afforded the protections under Supreme Court Rule 402. *Smith*, 59 Ill. 2d at 242-43.

The State counters that the proceedings were not tantamount to a guilty plea because defendant preserved his objection to admission of certain evidence. Appellate courts since *Smith* have held that a stipulated bench trial is not tantamount to a guilty plea where a factual or legal defense has been presented. (*People v. Russ* (1975), 31 Ill. App. 3d 385; *People v. Sampson* (1985), 130 Ill. App. 3d 438, 442.) Preservation of a pretrial issue such as the denial of a motion to suppress

constitutes such a defense. *People v. Ford* (1976), 44 Ill. App. 3d 94, 98.

Defendant maintains this distinction does not apply where defense counsel has conceded the sufficiency of the evidence, as in *Smith*. Defendant notes that in the cases applying the "defense" distinction, the defendants had not stipulated to the sufficiency of the evidence. Moreover, defendant continues, in *Smith* a legal defense of double jeopardy had been preserved. Therefore, this case is controlled by *Smith* and not the "defense" distinction cases.

■■ Defendant's observations are accurate. In a survey of several appellate cases, all of which found the stipulated bench trial not tantamount to a guilty plea because a defense had been presented, the facts do not show that the defendants stipulated or otherwise conceded the sufficiency of the evidence. (*People v. Hancock* (1983), 113 Ill. App. 3d 564; *People v. Leckner* (1986), 149 Ill. App. 3d 314; *People v. Fair* (1975), 29 Ill. App. 3d 939; *People v. Hart* (1986), 144 Ill. App. 3d 103; *People v. Banks* (1979), 71 Ill. App. 3d 15; *People v. Carlton* (1980), 81 Ill. App. 3d 738; *People v. Sampson* (1985), 130 Ill. App. 3d 438; *People v. Ford* (1976), 44 Ill. App. 3d 94; *People v. Russ* (1975), 31 Ill. App. 3d 385; *People v. Bonham* (1982), 106 Ill. App. 3d 769; *People v. Sullivan* (1979), 72 Ill. App. 3d 533.) It is also correct that in *Smith*, a double jeopardy defense was raised prior to the stipulated bench trial and was raised again on appeal. *Smith*, 59 Ill. 2d at 238-39.

It does not necessarily follow, however, that the observations noted by defendant compel the conclusion he has reached, that a stipulated bench trial is tantamount to a guilty plea where defendant concedes the sufficiency of the evidence, even where defendant presented and preserved a defense. No court has explicitly fashioned such a rule. The cases noted above were decided wholly or primarily on the fact defendant had presented and preserved a defense. In five cases, the fact defendant had not stipulated or conceded the sufficiency of the evidence was not mentioned. (*Leckner*, 149 Ill. App. 3d 314; *Banks*, 71 Ill. App. 3d 15; *Carlton*, 81 Ill. App. 3d 738; *Sampson*, 130 Ill. App. 3d 438; *Bonham*, 106 Ill. App. 3d 769.) It was mentioned as a distinguishing factor from *Smith* in five other cases (*Hancock*, 113 Ill. App. 3d at 573; *Fair*, 29 Ill. App. 3d at 941; *Hart*, 144 Ill. App. 3d at 106; *Ford*, 44 Ill. App. 3d at 97; *Russ*, 31 Ill. App. 3d at 390); however, it was not the primary basis for the decision. The only rule uniformly applied is that a stipulated bench trial procedure is not tantamount to a guilty plea if the defendant presented and preserved a defense.

This established rule is arguably at odds with *Smith* since in *Smith* defendant had presented a double jeopardy defense below and on appeal. Defendant argues that the "defense" cases are distinguished from *Smith* because defendants had not conceded the sufficiency of the evidence. We reject this interpretation for two reasons.

First, as just discussed, the cases have not emphasized, and some have not even mentioned, that defendants did not concede the sufficiency of the evidence. Furthermore, in *Smith*, the court did not address the fact defendant had raised a double jeopardy defense below and on appeal. Thus, it is not clear whether the court considered the case a "defense" case. One appellate court concluded *Smith* was a "no defense" case. (*Russ*, 31 Ill. App. 3d at 390.) In another case, *People v. Sullivan* (1979), 72 Ill. App. 3d 533, 537, the Third District Appellate Court discussed its concern over appellate opinions that determined *Smith* was "harmonious either with the rationale that no defense was presented or that the nature of the stipulation set the case apart." (*Sullivan*, 72 Ill. App. 3d at 537.) The court first noted that the *Smith* court's observations on the stipulated bench trial procedure were unnecessary. The critical issue decided in that case was that defendant had been punished for exercising his constitutional right to proceed in the juvenile court. (*Sullivan*, 72 Ill. App. 3d at 538.) The court also noted that the only case cited by *Smith* was *People v. Stepheny* (1974), 56 Ill. 2d 237, 238-40, a case where defendant's trial was a sham; the attorneys and the judge agreed to the result and to putting on evidence simply to "go through the motions of the trial." Finally, the court noted that *Smith* did not address the significance of *Smith's* double jeopardy defense raised below. The *Sullivan* court concluded that the observations made by appellate courts regarding *Smith* were of little assistance to resolving the issue. (*Sullivan*, 72 Ill. App. 3d at 538.) We agree.

Second and more importantly, however, we reject defendant's contention because it ignores the practical workings of the stipulated bench trial procedure, albeit a procedure that has been strongly criticized. (See *People v. Bonham* (1982) 106 Ill. App. 3d 769, 773; *People v. Sullivan* (1979), 72 Ill. App. 3d 533, 538.) A guilty plea waives all errors except those that are jurisdictional. (*Sullivan*, 72 Ill. App. 3d at 536.) The stipulated bench trial has been used to avoid the waiver rule while still allowing the parties to proceed with the benefits and conveniences of a guilty plea procedure. (*Sullivan*, 72 Ill. App. 3d at 536.) It is safe to say that when a defendant proceeds by a stipulated bench trial to preserve an evidentiary issue, defendant does so because he recognizes the sufficiency of the evidence and sees no tacti-

cal advantage in attempting to contest this evidence. If defendant believed otherwise, he would not use this procedure.

■■ ■ Therefore, it would exalt form over substance to accept a stipulated bench trial without admonishments where defendant presented a defense only if defendant refrained from expressly stipulating or conceding the sufficiency of the evidence. We find that, if a defendant has preserved a defense in a stipulated bench trial, the proceeding is not tantamount to a guilty plea. Turning to the facts in this case, defendant presented and preserved a defense based on a motion to suppress evidence. Therefore, the stipulated bench trial was not tantamount to a guilty plea and did not require admonishments pursuant to Supreme Court Rule 402.

As a final note, we also find this case distinguished from *Smith*. In *Smith*, the court found there was no indication defendant was made aware of the stipulation's effect. We believe the record in the instant case demonstrates that defendant was sufficiently informed of the effect of the procedure. Defense counsel stated to the court in defendant's presence that defendant was not contesting the sufficiency of the evidence, but was proceeding with a stipulated bench trial to preserve an evidentiary issue on review. In the second trial, defense counsel stated he had discussed with his client the rules of accountability, and his client admitted there was sufficient evidence to convict, but for purposes of argument at sentencing, he would not accept the stipulation that he struck the victim. Also, in both trials the trial court advised defendant of his right to a trial by jury and of his right to testify and made sure defendant voluntarily waived these rights.

We note one other factor. We believe the court in this case, regardless of defense counsel's concessions, made an independent determination of defendant's guilt in each of the stipulated bench trials. The court did not simply accept the stipulations as pleas of guilty. In one trial, the court inquired whether a stipulation included an in-court identification of defendant. Along with the stipulations, the court heard testimony from a witness who was cross-examined by defendant. The court also asked defendant if he wished to testify or present evidence, and the court invited and heard argument after the stipulations were read.

Finally, we caution that our holding should not be interpreted as an endorsement of the stipulated bench trial without Supreme Court Rule 402 admonishments. Appellate courts have criticized the procedure and advised courts to admonish defendants as if they were pleading guilty in order to do away with the confusion the procedure

creates. (See *Bonham*, 106 Ill. App. 3d at 773.) We urge trial courts to heed this advice.

Defendant next contends his counsel rendered ineffective assistance by conceding the sufficiency of the evidence. Defendant urges that *People v. Hattery* (1985), 109 Ill. 2d 449, applies to this case. In *Hattery*, the court noted that ordinarily, to prevail on a claim of ineffective assistance of counsel, defendant must satisfy the two-part test set out in *Strickland v. Washington* (1984), 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065, but there are some circumstances that are so likely to prejudice the accused that such prejudice need not be shown; it will be presumed. (*Hattery*, 109 Ill. 2d at 461, citing *Strickland v. Washington* (1984), 466 U.S. 668, 692, 80 L. Ed. 2d 674, 696, 104 S. Ct. 2052, 2067.) *Hattery* then cited *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039, where the Supreme Court stated that the sixth amendment requires, at a bare minimum, that defense counsel act as a true advocate for the accused. "Where 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.' " *Hattery*, 109 Ill. 2d at 461, quoting *United States v. Cronic* (1984), 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047.

*Hattery* concluded that where counsel admitted his client's guilt throughout the jury trial and the record failed to indicate that defendant consented to this strategy, the State's case was not subjected to a meaningful adversarial testing. (*Hattery*, 109 Ill. 2d at 464-65.) Counsel in *Hattery* had told the jury more than once that defendant was guilty, using this tactic to convince the jury not to impose the death penalty at sentencing.

The supreme court has since held that *Hattery* should be narrowly construed. (*People v. Johnson* (1989), 128 Ill. 2d 253, 269.) It has been held not to apply where counsel did not unequivocally concede guilt (*People v. Emerson* (1987), 122 Ill. 2d 411, 430) and where counsel conceded guilt for murder but did not concede the elements of lesser charges such as attempted murder, felony murder, armed violence, and aggravated battery (*Johnson*, 128 Ill. 2d 253). In *Johnson*, the court determined that, unlike *Hattery*, counsel presented a theory of defense. *Johnson*, 128 Ill. 2d 253.

*Hattery* has also been distinguished in *People v. Schmidt* (1988), 168 Ill. App. 3d 873. In this case, defense counsel neither cross-examined the State's witnesses nor presented defense witnesses, and in closing argument defense counsel stated that the State

had proved count II of the charges. Defense counsel did, however, argue that the State failed to prove intent as to count I and argued that probative evidence should have been suppressed. The court held that since the procedure was a bench trial, the trial court would not have considered counsel's statement on count II as an admission of guilt. (*Schmidt*, 168 Ill. App. 3d at 884.) Furthermore, the court found that the record showed the State's case was subjected to meaningful adversarial testing. Accordingly, defendant had to satisfy the two-part *Strickland* test. *Schmidt*, 168 Ill. App. 3d at 884.

The instant case is analogous to *Schmidt*. Here, as in *Schmidt*, and unlike *Hattery*, defense counsel pursued a defense to keep damaging evidence from admission. Also, the proceedings were before a judge instead of a jury, and it does not appear that the judge took counsel's statements to be an admission of guilt. Since the instant case is not one where counsel entirely failed to subject the case to meaningful adversarial testing, ineffective assistance shall not be presumed. (See *Johnson*, 128 Ill. 2d at 268-70.) Defendant must satisfy the two-part *Strickland* test. He must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.

■ Defendant argues that counsel should have contested the reliability of the eyewitness identifications and questioned when the latent fingerprints may have been placed at the crime scenes. Defendant's argument is not convincing. Defendant was identified at a lineup by two men he accosted, and he fit the general description given by another man he attacked. Moreover, defendant's fingerprints were on a gas can that a witness testified defendant brought into the gas station, and his print was found on the cab of the cab driver he attacked. There is not a reasonable probability that had defense counsel acted as defendant urges, he would have been found not guilty.

Next, defendant contends that the cause should be remanded for a hearing on defendant's *pro se* motion for a new trial alleging ineffective assistance of counsel. Defendant contends error occurred where the trial court did not probe defendant's assertions and where the court did not appoint new counsel to represent defendant.

■ There is no *per se* rule entitling defendant to new counsel when he alleges ineffective assistance of counsel. (*People v. Jackson* (1985), 131 Ill. App. 3d 128, 138; *People v. Johnson* (1981), 98 Ill. App. 3d 228.) Nor is there a *per se* rule requiring a trial court to

probe a defendant's allegations. In *Jackson* (131 Ill. App. 3d at 139), the court stated that a court should examine several objective factors to determine whether new counsel should be appointed. "If the claim goes to matters of trial tactics or strategy, the defendant's claim should be found spurious and his request for new counsel denied. \*\*\* If, however, the factual matters show possible neglect of the defendant's case, the court should appoint new counsel who can undertake an independent evaluation of the defendant's claim and present the matter to the court from a detached, yet adversarial, position." (*Jackson*, 131 Ill. App. 3d at 139.) In the next paragraph the court states: "It seems elementary that during the evaluation of defendant's claims, some interchange between the court and the defendant's attorney must take place. Such an interchange is necessary to avoid potential abuses by those who would falsely claim situations of the *Krankel* type." *Jackson*, 131 Ill. App. 3d at 139.

Defendant contends *Jackson* requires a trial court to probe into a defendant's allegation of ineffective assistance. This reading is off the mark. *Jackson* states only that the factual matters underlying the claim should be examined. The opinion does not state that the court has an obligation to uncover factual matters defendant may not have articulated. Also, the passage in *Jackson* pertaining to an interchange between counsel and the trial court does not, as defendant asserts, hold that such an interchange is necessary. The court is merely explaining why defense counsel and the trial court will ordinarily have an exchange when there is an allegation of neglect, but it does not require an exchange.

Whether a probe is warranted will depend on the same factors considered to determine whether to appoint new counsel. If the facts alleged by defendant plainly go to matters of trial tactics or strategy, there will be no need for further inquiry. If, on the other hand, the facts raise a legitimate question about whether counsel neglected the case, and it appears there is a reasonable probability that but for this neglect the outcome would be different, then further inquiry may be warranted. This was the case in *People v. Krankel* (1984), 102 Ill. 2d 181, 189, where the court reversed for a hearing on defendant's motion of ineffective assistance of counsel, holding that new counsel should be appointed to inquire into trial counsel's performance. In *Krankel*, defendant alleged that his attorney failed to contact an alibi witness. (*Krankel*, 102 Ill. 2d at 188.) *Krankel* is distinguished from this case, however, because defendant has not alleged something as obviously neglectful as failing to contact a potential alibi witness.

In his motion, defendant alleged that he received ineffective assistance of counsel due to the following: (1) counsel was under a conflict of interest since counsel also represented a codefendant; (2) counsel's case load was so large that it rendered him incapable of adequately preparing for trial; (3) counsel told defendant there was no way he could win the case; and (4) defendant asserted that the evidence was insufficient to establish guilt beyond a reasonable doubt.

█▐█ Defendant first argues his allegation that the evidence was insufficient to prove him guilty beyond a reasonable doubt should have alerted the court to make a further inquiry. Defendant argues this statement demonstrates defendant may not have understood the stipulated bench trial procedure. Defendant does not articulate how this conclusion demonstrates ineffective assistance of counsel, but it is presumed defendant would argue this raises a question as to whether defense counsel adequately apprised defendant of the nature of the procedure. It is not reasonable, however, given defendant's motion, to require the trial court to make this speculative connection. Defendant does not assert in his motion that counsel failed to inform him adequately of the procedure. Nor does defendant state that he did not want to use the procedure or that he did not understand the procedure. Defendant's allegation concerning the sufficiency of the evidence has nothing to do with his assertions that counsel was ineffective. Aside from this, there also is not a reasonable probability given the evidence that defendant's outcome would have been different had he not stipulated to the evidence.

█▐█ Defendant next contends his counsel labored under a conflict of interest due to his representation of a codefendant. The trial court had been apprised of this issue when defendant first raised it before his stipulated bench trial. At that time, defense counsel stated that the codefendants had a personality conflict, but did not have antagonistic defenses. The trial judge stated he did not find a conflict of interest, but he would reconsider his ruling if a problem arose. Since the trial judge was familiar with the facts underlying this contention and was in a position to appraise the situation throughout defendant's proceedings, there was no need for the court to make a further inquiry or appoint new counsel. Furthermore, the court's decision was not an abuse of discretion since the record does not demonstrate that the defendants had antagonistic defenses. Nor is there a reasonable probability that the outcome would have been different had defense counsel not represented both defendants.

█▐█ The next factor asserted by defendant is that counsel told him he could not win. There is nothing unreasonable about counsel

truthfully assessing his client's chances. Finally, defendant asserts defense counsel did not have time to prepare a good defense because of his large case load. Defendant does not specifically explain how defense counsel failed to dedicate the time required for his defense except to state that counsel had a lack of attendance. Nothing in the record establishes that counsel failed to give adequate time to defendant's defense. Nor is there a reasonable probability that defendant's outcome would have been different had counsel spent more time on the case.

In his final issue, defendant asks this court to incorporate the argument he made in a separate consolidated appeal, *People v. Fenner* and *People v. Horton,* in which he and defendant, Cornell Fenner, contested the constitutionality of the stop which led to their arrest and the fruits of that arrest. This issue was resolved against defendant in *People v. Fenner* (1989), 191 Ill. App. 3d 801. That resolution is incorporated here. Thus, defendant is not entitled to remand for a further hearing on his motion to suppress.

The judgment of the lower court is affirmed.

UNVERZAGT, P.J., and INGLIS, J., concur.